BEECHER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. July 9, 1900.)

1. NEW TRIAL—JUDGES—APPEARANCE AS WITNESS—PRACTICE OF LAW.

The fact that plaintiff's former counsel, who had been appointed judge, appeared as a witness in an inquisition and assessment of damages, was not ground for setting aside the assessment, since it was not a participation in the trial forbidden by the statutory prohibition against such magistrate's practicing law.

2. CARRIERS—DEATH—DAMAGES.

In an action against a railroad company for negligently killing plaintiff's husband, an active business man, 61 years old, and enjoying excellent health, the jury were not bound by the amount which decedent actually earned during his life in awarding damages, but could consider whether his earning capacity would have probably increased or diminished.

8. SAME—EXCESSIVE DAMAGES.

Where the death of plaintiff's husband, an active business man, 61 years old, deprived her of home and support, a judgment for $10,000 was not excessive, since the jury could find that good health and exceptional activity promised him a long life.

Appeal from special term, Queens county.

Action by Anna M. Beecher, as executrix of Charles L. C. Beecher, deceased, against the Long Island Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

William J. Kelly, for appellant.

Augustus N. Weller, for respondent.

WILLARD BARTLETT, J. This case has already been before the appellate division and before the court of appeals. Beecher v. Railroad Co., 35 App. Div. 292, 55 N. Y. Supp. 23; Id., 61 N. Y. 222, 55 N. E. 899. In both tribunals it was decided that the plaintiff was entitled to recover, and, inasmuch as the defendant had stipulated that judgment absolute might be rendered against it in the event of an affirmance in the court of appeals, the case went back to the trial term for an assessment of damages only. The jury rendered a verdict for $10,000 in favor of the plaintiff. The defendant moved at special term to set aside the inquisition, and has now appealed from an order denying that motion. The motion was based on three grounds (1) that John Fleming, who was formerly the plaintiff's attorney, but had become a justice of the court of special sessions in the city of New York, participated in the trial, notwithstanding the statutory prohibition which forbids such a magistrate from engaging in the practice of the law; (2) that the court erred in instructing the jury that they could take into consideration the probability as to whether the plaintiff's intestate would earn more than he had earned or not; and (3) that the damages awarded were excessive.

1. Although Judge Fleming attended the trial, it appeared that he did so as a witness only, and that the learned counsel for the defendant was mistaken in supposing that he made any suggestions to the counsel who represented the plaintiff upon the inquisition, either in respect to the selection of the jury or the conduct of the case.

2. The plaintiff's intestate was an active business man, 61 years of age, who had been employed in the stock exchange since 1885 as a collector of stock news and a telegraph operator, from which pursuit he derived an income of $1,070 per annum.  He appears to have enjoyed excellent health up to the time of his death, and a witness who was a doorkeeper at the stock exchange, and had known Mr. Beecher for 35 years, testified that he looked like a man of 45 instead of 60. Mrs. Beecher, the widow, was the only person in whose behalf damages were recoverable, as there were no children of the marriage. In charging the jury the learned court instructed them that in determining what this man was worth to this woman at the time she lost him they should take into consideration—First, his age; secondly, the character of his employment, and the amount which he made; and, thirdly, his health and his earning capacity.  No exception was taken to this instruction, or to any part of the principal charge; but after the jury had retired for deliberation they were brought back into court by direction of the presiding judge, who expressed his apprehension that they might suppose from what he had said that in giving compensation to the widow they were limited by what Mr. Beecher actually did earn during his life.  He therefore explained his meaning by saying that she was entitled to compensation for the earning capacity of her husband who was killed, and that what he did earn was evidence tending to show what his earning capacity was, although it was not complete and conclusive evidence on that point.  "You are to take that into consideration," he said, "but you are not absolutely bound by those figures or confined within those limits."  To this an exception was taken by the counsel for the defendant, who also excepted to the further instruction that the jury were to consider as a question of fact on the evidence the probability as to whether the plaintiff's intestate would earn more or not. We find no error in these supplemental instructions.  The law is perfectly well settled that the pecuniary loss to those who are entitled to be compensated for the wrongful death in such cases as this is "what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime."  Railroad Co. v. Butler, 57 Pa. St. 335.  This was the rule laid down by the learned trial judge.  It is true that at the request of counsel for the plaintiff he did tell the jury that there was no evidence as to Mr. Beecher's earning capacity other than the monthly salary which he received; and he is criticised in the appellant's brief for having said this, and yet telling the jury that they were not bound by that figure.  The statement that there was no other evidence on the subject was really too favorable to the defendant. When we consider all that the judge said on this matter,—his reference to all the other circumstances in the case,—we think that a correct idea was conveyed to the jury.  They must have understood that, while their chief guide was to be the proved earnings of the decedent, yet they were at liberty to determine from the other facts in evidence whether his ability to earn money would have increased or decreased, and, if so, to fix the amount of their verdict in the light of such probability.  Indeed, what the learned court told them

on this subject might have been as beneficial to one side as to the other; for it was, in effect, a direction to consider the probability that the earning capacity of the plaintiff's intestate might diminish with advancing age, rather than increase.

3. While the damages were liberal, they cannot be pronounced excessive under the circumstances. The death of the plaintiff's husband appears to have deprived her not only of her maintenance, but of a home. The jury were at liberty to find that the good health and exceptional activity of the decedent promised a long life, far exceeding the estimate of the Northampton tables. These and other facts which may have entered into the assessment of damages by the jury lead us to the conclusion that the verdict should not be disturbed.

Order affirmed, with $10 costs and disbursements. All concur.