attached to acts of part performance by the party sought to be charged. If I agree with A., by parol, without writing, that I will build a house on my land, and then will sell it to him at a stipulated price, and in pursuance of that agreement I build a house, this may afford me ground for compelling A. to complete the purchase; but it certainly would afford no foundation for a claim by A. to compel me to sell on the ground that I had partly performed the contract. The circumstance of preparing and executing the will (supposing it satisfactorily proved) might afford strong evidence of the existence of the parol contract insisted on, if that were a matter into which we were at liberty to inquire; but it can have no effect as giving validity to an otherwise invalid contract."

I advise a reversal of the judgment, and the granting of a new trial; costs to abide the final award of costs. All concur.

---

## CARLIN v. NEW YORK DOCK CO. et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. TRIAL (§ 159*)—NONSUIT—WHEN AUTHORIZED.

Where the evidence raised a question of fact for the jury, the court could not grant a nonsuit on motion, decision on which was reserved pending the submission and findings of the jury on special questions, and after answers by the jury; but the jury should have rendered a general verdict, or the court should have directed a verdict for the party entitled.

[Ed. Note.—For other cases, see, Trial, Cent. Dig. §§ 359–366; Dec. Dig. § 159.*]

2. APPEAL AND ERROR (§ 866*)—QUESTIONS REVIEWABLE.

Where the court granted a nonsuit on motion, decision on which was reserved pending the submission and findings of the jury on special questions, and after answers by the jury, the only matter reviewable on appeal was the judgment of nonsuit, though plaintiff appealed from the order denying a motion to set aside the special findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

3. COLLISION (§ 149*)—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

In an action for the death of the master of a loaded car float in tow of a tug, in a collision between the tug and another tug, evidence held to require the submission to the jury of the negligence of the employés in charge of the tugs.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 149.*]

4. STATES (§ 12*)—JURISDICTION.

Vessels afloat on the North River are subject to the exclusive jurisdiction of the state of New York.

[Ed. Note.—For other cases, see States, Cent. Dig. § 7; Dec. Dig. § 12.*]

5. STATES (§ 12*)—TERRITORIAL JURISDICTION—ACTION FOR DEATH.

Where the state of New York has jurisdiction of the waters of the North River for purposes of commerce and navigation, it has power to create a cause of action in favor of the next of kin of one negligently killed by vessels navigating in such waters.

[Ed. Note.—For other cases, see States, Cent. Dig. § 7; Dec. Dig. § 12.*]

Hirschberg, P. J., and Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Sarah A. Carlin, as administratrix of Thomas Carlin, deceased, against the New York Dock Company and another. From

judgments dismissing the complaint, and from an order denying a motion to set aside the order dismissing the complaint, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, MILLER, JENKS, and THOMAS, JJ.

Rufus O. Catlin, for appellant.

James J. Mahoney (M. J. Wright, on the brief), for respondent New York Dock Co.

Nathaniel S. Corwin, for respondent New York, N. H. & H. R. Co.

THOMAS, J.    Plaintiff's intestate was killed by a collision between two car floats in the North River.  The tug Brainard had on its starboard side a loaded car float some 225 to 250 feet in length, which caused it to project far ahead of the tug.  The decedent was the master of this float and responsible for the securing of the cars on the tracks thereof by proper blocking.  The other colliding vessel was Transfer No. 10, owned by the New York & New Haven Company, which had a similar car float on each side.  The general course of the Brainard was southeasterly towards Brooklyn, and the general course of Transfer No. 10 was northwesterly towards New Jersey.  The starboard float of No. 10 collided with the float of the Brainard.  The court reserved decision of motions for nonsuit pending the submission and findings of the jury upon specific questions, and, after answers to the effect that the death of plaintiff's intestate was not caused by the negligence of the captain of either tug, dismissed the complaint.  The plaintiff appeals from the judgments dismissing the complaint, and from the order denying plaintiff's motion to set aside the direction to dismiss the complaint and grant a new trial, and to set aside the special findings of the jury as above indicated.

If the status of the plaintiff is the same as if the nonsuit had been granted without findings by the jury, that is, if no facts are adjudicated by the verdict, then the plaintiff is entitled to such adjudication, and the nonsuit was error.  If the findings are an adjudication whether or not the nonsuit is based thereon, they should be set aside as against the evidence.  One or both of the tugs were guilty of negligence and the jury should have so found.  The learned trial justice properly charged the jury that:

"Both sides cannot be telling the truth. * * * Either they are mistaken, honestly mistaken, or their memory is bad, or perhaps they are trying to make fools of you.  I do not know which it is."

And yet the jury found both captains free from negligence.  An examination of the record will show that as to both defendants there was a question of fact for the jury, and that the jury did not correctly find.

The Brainard's master testified that he made out the opposite tug at least by her smoke a mile away, dead ahead of him; both were blowing fog signals when 500 feet apart; No. 10 gave a single whistle when 300 feet away; he saw her stack 300 feet away and her pilot house 200 feet away; he answered the single whistle, ported his helm, which would carry the Brainard to starboard, stopped his engine, gave danger signals when No. 10 was 150 to 200 feet away, then gave the

engineer signals to go back; when he first started to back he was
"close on to 200 feet away, maybe 150 feet." As to the effect of re-
versing his engine he said:

"By stopping my boat I mean I stopped the engine. I was slowed down all
the way across. I gave the signal to the engineer to stop the engine. The
engine was stopped when we gave the signal. The engineer most generally
stops then, but the boat hadn't come to a stop. She will carry her headway a
slight distance. After I gave the signal to stop she went ahead very little,
because I went back onto her right after that. * * * I stopped my engine,
I mean; the boat kept going on very little. She had been slowed down all the
way from Jersey City. The tide was about high-water slack. That would
have very little effect at all upon my boat. I stopped my boat right away
when I answered the one whistle; I ported my helm. I had steerage way at
that time, but it didn't amount to much. I had probably a little steerage way,
probably half a point or a point; but she would overcome that when I backed.
* * * I was backing full speed from the time I was 150 feet to 125 feet
away."

The witness intended to say that his boat had lost its headway at the
time of collision and was going back through the water. He says
that neither tug changed her course from the time they were 200 feet
apart. He says that No. 10 kept coming on.

"As the boat approached my boat, just before we came together, I heard
him ringing three bells and the jingle bell. That meant for him to go back;
he was coming ahead half speed, and to go back full speed. * * * I heard
his three bells to go back when we hit, or just before we hit. * * * Ap-
parently he was headed to pass on my starboard side ."

The master of No. 10 says from the time of leaving South Ferry he
continuously sounded fog signals of one long blast and two short ones,
and after stopping a minute or two on account of thick weather, in
response to a long signal from other boats, proceeded at half speed
under one bell; that he saw the Brainard within 200 feet of him, and
instantly blew an alarm whistle, signaled engineer to back; the Brain-
ard held his way towards him, and "the port corner of his float struck
the port corner of our float, starboard float"; that he did not give one
whistle to the Brainard and answered her one whistle with an alarm
whistle, and that he could then see the Brainard's smoke; that he was
"not moving ahead at all when he struck me; I was moving back,
sternway. I had sternway through the water, going backwards
through the water." And he further testifies:

"Do you mean you were 200 feet from this man when you started to go
back through the water? A. As near as I can judge. Q. Did he follow you up
and hit you? A. Yes."

Two tugs cannot collide if they are going back and away from each
other. Here was a palpable question of fact for the jury, and the
court was not justified in dismissing the complaint as to either defend-
ant, but should have submitted the question to the jury and taken
their verdict. But it may be answered that the court did that very
thing. If it did, the jury should have rendered a general verdict, or
the court should have directed a verdict for the party entitled, and
from the judgment entered thereon, and perchance from the order de-
nying a new trial, the plaintiff could have appealed to this court. As
there is no verdict for either party, and, of course, no judgment based

on the verdict, there can be no review of the same. The only matter that can be reviewed is the judgment entered on the nonsuit, and, as has been stated, it is clear that a nonsuit should not have been granted. The plaintiff has appealed from the order denying the motion to set aside the special findings; but as there is no verdict for anybody, and no judgment predicated on a verdict, such appeal still leaves the nonsuit as the only matter of contention before this court. But a verdict that neither defendant is liable is clearly contrary to the present evidence. The judgment of nonsuit, the order denying a new trial, and denying, it may be, the motion to set aside the findings, should be reversed, and a new trial granted.

It is urged that the collision and death happened so far to the westward in the river that it was within the jurisdiction of the state of New Jersey. The state of New York had jurisdiction of the locus in quo, and the limitation that obtained in Devoe Manufacturing Co., 108 U. S. 401, 2 Sup. Ct. 894, 27 L. Ed. 764, did not obtain. In People v. Central R. R. Co. of N. J., 42 N. Y., at page 299, it is said:

"Confessedly, vessels afloat upon the waters of the bay or river are, and were intended to be, subject to the exclusive jurisdiction of New York."

And I think that it is undoubted that the municipal law of New York governs the case at bar. Ferguson v. Ross, 126 N. Y. 459, 463, 27 N. E. 954. If this state has jurisdiction of the waters for the purposes of commerce and navigation, its legislative power to create a cause of action in favor of the next of kin of one negligently killed by vessels navigating in such waters would follow.

Judgments and order reversed, and new trial granted, costs to abide the event.

JENKS and MILLER, JJ., concur.

WOODWARD, J. (dissenting). Plaintiff's intestate was killed on the morning of March 24, 1903, while employed as a floatman upon one of the car floats lashed to the steam tug known as the John L. Brainard, and belonging to and under the control of the New York Dock Company. The accident resulted directly from a collision with the car floats lashed to the steam tug Transfer No. 10, which was proceeding from the Brooklyn side of the East River to docks of the Jersey Central Railroad in New Jersey; the John L. Brainard coming from New Jersey in the opposite direction. Both floats were loaded with cars, and in the collision cars on the John L. Brainard were thrown from their position upon the tracks in such a way that plaintiff's intestate was caught between them and crushed to death. The defendants at various stages of the trial moved for a nonsuit, and this motion was renewed at the close of the evidence. The court reserved decision upon the motions, and submitted five questions to the jury, which were answered generally in favor of the defendants, and the court, after discharging the jury, and about one week subsequently, granted the motions directing judgment dismissing the complaint as to both the defendants. The plaintiff, in appealing, contends that this action on the part of the trial court was error; that the dismissal of the com-

plaint after the special verdict of the jury was in effect a dismissal on the merits, which is not permitted under the Code. The plaintiff formulates her contention as follows:

"The question, therefore, presented in this case, is: Were the defendants, or either of them, entitled to a nonsuit when their motions were made? If not, it is submitted that the special findings of the jury could not be resorted to or used by the court as a basis for a nonsuit, and that a dismissal of the complaint based upon such findings would be erroneous, inasmuch as such a dismissal would necessarily be upon the merits, and this the statute does not warrant or authorize."

We are unable to see the force of this suggestion. The provision of section 1187 of the Code of Civil Procedure is that:

"When a motion is made to nonsuit the plaintiffs or for the direction of a verdict, the court may, pending the decision of such motion, submit any question of fact raised by the pleadings to the jury or require the jury to assess the damage. After the jury have rendered a special verdict upon such submission or shall have assessed the damage, the court may then pass upon the motion to nonsuit or direct such general verdict as either party may be entitled to."

The court in this case had before it merely a motion for a nonsuit. The only issue tendered by the complaint was the alleged negligence of the defendants in the navigation or management of the floats which came into collision, and this question was submitted to the jury, and the jury held that there was not sufficient evidence to show negligence on the part of the persons managing either of the floats, and this verdict was sufficient to entitle the defendants to the direction of a verdict in their favor. The jury had been dismissed. There was no motion for the direction of a verdict; but the court did grant the motion, decision of which had been reserved with the consent of the plaintiff, to dismiss the complaint, and the plaintiff has the advantage of a judgment of nonsuit, rather than of the direction of a verdict, to which the defendants were entitled. The provision of the Code of Civil Procedure that, after the jury has passed upon the submitted questions, the "court may then pass upon the motion to nonsuit," etc., is meaningless, unless it is intended to provide for a case in which the court, being in doubt, submits a question of fact for determination, and the jury, agreeing with the court, finds that there is a failure of the evidence necessary to support "any question of fact raised by the pleadings," the motion to nonsuit is granted. It is not a determination of the whole case upon the merits. It is merely the determination of some specific fact, and upon the determination of that fact the court is called upon to pass upon the motion to nonsuit. The judgment is not one upon the merits; it is merely a nonsuit, in this particular case the plaintiff having had the opportunity of going to the jury upon a controlling question, while the defendants appear upon this appeal with the advantage of a verdict of a jury which in effect says there was no evidence on which they might properly find the defendants guilty of negligence, and the evidence is to be examined, not under the general rule which gives to the plaintiff upon appeal the right to the most favorable inferences to be drawn from the evidence, but practically whether the evidence was such as to warrant the jury in its determination. The court had no power to dismiss the complaint upon

the merits. Levy v. Grove Mills Paper Co., 80 App. Div. 384, 386, 80 N. Y. Supp. 730. It had only power to grant the motion for a nonsuit; and the special verdict being made a part of the record on appeal, and this court having the power to "direct such judgment thereon as either party may be entitled to" (Code Civ. Proc. § 1187; Hoey v. Met. St. R. Co., 70 App. Div. 60, 62, 74 N. Y. Supp. 1113), it only remains to inquire whether the evidence in this case was such as to require the jury to reach the conclusion that the defendants were negligent in the operation of these floats, which are large barges constructed for the purpose of conveying freight or passenger cars and towed to their destination by steam tugs.

The evidence was undisputed that on the morning in question there was a heavy fog; that the boats or barges were approaching each other, sounding fog warnings at intervals; that they were seen by the respective captains of the tugboats who were in charge of the navigation of the craft, when from 200 to 500 feet apart; that danger signals were given; and that the engines on each of the tugs were reversed, and apparently that everything that could be done was done to avert the collision. There was no expert evidence introduced as to the proper method of handling these floats, no negligence is suggested as to the method of towing these boats, and all the evidence before the jury tended to show that the boats, operated at half speed in the fog, were operated with ordinary care. Under such circumstances, the mere fact that a collision has occurred and that some one has been injured does not establish actionable negligence, and the verdict of the jury was clearly in harmony with the evidence.

This being the case, the court was justified in granting the motion for a nonsuit upon the coming in of the special verdict, and the judgments and order appealed from should be affirmed.

HIRSCHBERG, P. J., concurs.