peculiarly high value of the wines are an element to be considered upon the merits of the application.

The plaintiff, however, claims that she has no such books and papers. I cannot go so far as to say that the mere fact that the plaintiff gives the items of her claim for damages with some particularity raises a serious suspicion that her statement is untrue; but it does raise some suspicion that in making up the bill of particulars resort was had to some books and documents. If such books or documents, even if not in plaintiff's possession, are in her control, though in the possession of her husband, they should be produced. An order for a discovery cannot do the plaintiff any substantial injury, if no books are in her control; for in that event she can free herself of the burden of the order by making an affidavit to that effect.

I also find no laches in the application. Until the plaintiff pressed her complaint, it would have been useless for the defendant to prepare its defense. The order should provide that the plaintiff produce the books, either at her attorney's office or at the place of business of her husband or herself.

Motion granted, without costs. Settle order.

---

(71 Misc. Rep. 521.)

CARLIN v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Trial Term, Kings County. April, 1911.)

1. NEW TRIAL (§ 26*)—GROUNDS—VARIANCE—NECESSITY OF OBJECTIONS.

Where a complaint for causing death alleged a collision between the tug owned by defendant and a tug owned by plaintiff's employer, and proof was received, without objection, of a collision between car floats instead of tugs towing them, and no objection was made at the close of plaintiff's case, when the pleadings could have been amended to conform to the proof, a motion for new trial will be denied, especially as the variance was immaterial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 37–39; Dec. Dig. § 26.*]

2. EVIDENCE (§ 34*)—JUDICIAL NOTICE—FEDERAL STATUTES.

The state courts are required to take judicial notice of and to enforce the general statutes of Congress regulating navigation, without any formal proof, even if the point be not urged by counsel.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 49, 50; Dec. Dig. § 34.*]

3. WITNESSES (§ 397*)—INCONSISTENT STATEMENTS—EFFECT.

In an action for death caused by the collision of vessels, testimony of the master of one of the vessels that his vessel was actually stopped when the vessels struck need not be accepted by the jury; he having testified on a former trial that his boat was backing away from the other and had actual sternway.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1265; Dec. Dig. § 397.*]

4. DEATH (§ 99*)—ACTION FOR CAUSING DEATH—EXCESSIVE DAMAGES.

An award of $10,000 for the death of a steady, industrious man, of good habits, 39 years old, who left a dependent widow with other next of kin, though it carries interest for eight years from the time of the death until the conclusion of the litigation, which brings it up to nearly $15,000, is not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Sarah A. Carlin, as administratrix, against the New York, New Haven & Hartford Railroad Company. Motion by defendant to set aside verdict for plaintiff, and for a new trial. Denied.

Pearsall & Pearsall (Rufus O. Catlin, of counsel), for plaintiff.

Charles M. Sheafe, Jr., for defendant.

PUTNAM, J. This is an action to recover damages for the death of plaintiff's husband, who lost his life on March 24, 1903, while employed as a floatman on one of the New York Dock Company's car floats being towed by the tug John L. Brainard. During dense fog, early in the morning, a collision occurred between the car float upon which plaintiff was employed and a car float being towed by the tug Transfer No. 10 owned by the defendant. The original action was against both the railroad company and the New York Dock Company, in which a judgment dismissing the complaint was reversed (135 App. Div. 876, 120 N. Y. Supp. 261; 137 App. Div. 71, 122 N. Y. Supp. 57; 198 N. Y. 600, 92 N. E. 1080; 200 N. Y. 598, 94 N. E. 1092), and the second trial is against only the defendant railroad company.

The testimony indicated that the fog was so dense that those navigating the defendant's tug did not see the tug Brainard and its car floats until the floats were but a very short distance apart, when both tugs reversed their engines, without wholly stopping their headway, as the cars on the dock company's float were lifted off the tracks and one was impelled across and onto the railroad company's car float, which movement crushed Thomas Carlin's head, causing his death. The collision was in the North River, about midway between the Battery and the New Jersey shore, at about 10 or 15 minutes past 6 a. m. The master of Transfer No. 10 testified to a haze when he left pier 45 East River, so that he was sounding a regular fog whistle; that off South Ferry vessels could be seen 600 or 700 feet away, when he stopped for ferryboats; that he then started up again with one bell, proceeding at a speed of about four miles an hour. The fog, however, increased and became so dense that from his position in the pilot house he could see only a short distance, estimated as but 10 feet, beyond the front of the projecting car floats which extended 140 feet ahead of his tug. He admitted that before seeing the approaching boat he had heard one or two fog signals from forward about a minute apart whose direction he had not exactly located, but that he kept on until he heard a single-blast whistle from the Brainard, just before she came out of the fog, which he answered with alarm blasts and then reversed his engine. Plaintiff had a verdict for $10,000.

Upon defendant's motion to set aside the verdict, four points are urged:

[1] First. The complaint alleged that the collision was between the two tugs, instead of stating that the actual impact was between car floats alongside, and it is insisted that this variance is material. Considering that this point was not taken at the close of plaintiff's case, and that a tug with its tow alongside is usually treated as a single vessel (The Civilta and The Restless, 103 U. S. 699, 26 L. Ed. 599), also that the evidence as to the collision details had been received

in the prior trial without objection, also that the entire flotilla in tow of the Transfer was owned by the above-named defendant and operated by its servants, there seems no merit in this point, which, if seasonably raised, would have been remedied by an amendment to conform the pleadings to the proofs.

[2] Second. The jury were informed of a federal statute in force at this time, being the act of Congress passed June 7, 1897 (chapter 4, 30 Stat. 96, 99 [U. S. Comp. St. 1901, pp. 2875, 2880]), enacting regulations for preventing collisions, to be followed "by all vessels navigating all harbors, rivers, and inland waters of the United States," excepting the Great Lakes and rivers emptying into the Gulf of Mexico, article 16 of which requires moderate speed in fog and mist, with the additional regulation:

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until the danger of collision is over."

It is urged that this rule had not been proved, and, as it had not been offered in evidence upon the trial, the charge to the jury introduced an element of which no evidence had been given. While the regulations of governing boards, local inspectors, or pilot authorities are matters of proof, the courts of the state of New York are required to take judicial notice and enforce general statutes of Congress without any formal proof (Milliken v. Dotson, 117 App. Div. 527, 102 N. Y. Supp. 564), even if the point be not urged by counsel and is originated by the court (Kessel v. Albetis, 56 Barb. 362). Indeed, it would be error for the jury to be instructed as to the management of the respective boats in a general way, without bringing before them the obligatory force of the statutes regulating the situation at the time. Belden v. Chase, 150 U. S. 674, 703, 14 Sup. Ct. 264, 37 L. Ed. 1218. Upon the trial, counsel for defendant also requested the court to charge in its favor touching another provision of the same statute (article 18, rule 9) forbidding the use of certain signals in fog and directing only alarm blasts to be given when vessels are not in sight of one another. This requirement, that steam vessels in fog shall not delay to stop their engines until they are seen, but shall stop upon hearing an unlocated signal forward of the beam, is so imperative that recent decisions have refused to accept excuses and condemned navigators for failure to obey such a reasonable regulation. The El Monte (D. C.) 114 Fed. 796; In re Clyde S. S. Co. (D. C.) 134 Fed. 97; The Georgic (D. C.) 180 Fed. 863, 870. The finding of the jury that the master of defendant's tug was negligent in this respect is, therefore, amply sustained.

[3] Third. The jury were not obliged to accept the evidence of the master of Transfer No. 10 that his vessel was actually stopped when the vessels struck. Apparently, on the former trial, each captain testified that his own boat was backing away from the other and had actual sternway. 135 App. Div. 879, 120 N. Y. Supp. 261. On this trial, the master of the Transfer merely claimed that his boat had stopped. This is the common illusion of an observer upon one of two approaching vessels in fog, that the forward motion is al-

ways from the other vessel, and that the observer's boat is stationary. The Herbert Manton, 14 Blatchf. 37, 40, Fed. Cas. No. 6,399.

[4] Fourth. The verdict of the jury of $10,000 for a man 39 years old, earning about $15 a week, is claimed to be excessive, as it carries interest since 1903, bringing it up to nearly $15,000. It has been the plaintiff's hardship that she has had to wait eight years while this case has been in litigation. The authorities in this state do not hold that $10,000 is excessive in the case of a steady, industrious man, of good habits, of the age of plaintiff's intestate, leaving a dependent widow with other next of kin. Beecher v. Long Island R. Co., 53 App. Div. 324, 65 N. Y. Supp. 642; Douglass v. Northern Central R. Co., 59 App. Div. 470, 69 N. Y. Supp. 370.

The motion to set aside the verdict is therefore denied.

Motion denied.