ANDREW-LEWIS, as Administrator of the Goods, Chattels and Credits of JULIUS LEWIS, Deceased, Claimant, *v.* THE STATE OF NEW YORK.

## Claim No. 15578.

(State of New York, Court of Claims, July, 1920.)

Claims — against the state — negligence — damages — Code Civ. Pro. § 1904 — Laws of 1918, chap. 611.

An administrator having established the facts relating to the death of his decedent while in the employ of and rendering services for the state, as a member of the National Guard, as recited in the statute (Laws of 1918, chap. 611) which authorized this court to hear, audit and determine a claim against the state for damages, the claimant is entitled to compensation for said death irrespective of the question of the contributory negligence of the decedent.

The court in estimating the damages is limited by section 1904 of the Code of Civil Procedure to the pecuniary loss to the family of the decedent and in determining his probable duration of life, may take into consideration annuity and mortality tables.

CLAIM for damages for negligence.

Kremer & Leavitt (Brackett, Todd, Wheat & Wait, of counsel), for claimant.

Charles D. Newton, Attorney-General (Henry C. Henderson, Deputy Attorney-General), for state.

Court of Claims, July, 1920.    [Vol. 112.

MORSCHAUSER, J.   The claimant, as administrator of Julius Lewis, deceased, presented a claim against the state.   Julius Lewis was injured July 13, 1916, at the State Armory, 125 West Fourteenth street, New York city, and at the time of his injury he was an enlisted member of the Twenty-first company, Coast Artillery Corps, National Guard of the State of New York.   He, with other members, was assisting packing a camp outfit preparatory to a camping expedition for two weeks at Ft. Wright, Fisher's Island, N. J., and the various articles intended for use at the camp were placed in boxes and lowered from the upper balconies of the armory.   There was a large loggia or gallery which had balconies on the sides from which the boxes were being lowered from the upper balconies to the ground floor of the armory, which was done by means of a block and fall.   The deceased and the other members of the militia were requested by their commanding officer in charge at the time to assist in this work. The balcony from which the boxes were lowered was some forty feet above the ground floor of the armory. The deceased, instead of using the stairway, took hold of the rope which was connected with the pulley and block and was being used for lowering the boxes, and in this way, while holding fast to the rope with both hands, was hoisted to the top balcony and when the deceased reached the top balcony he loosened one hand and reached for the rail of the balcony, and at that moment his hand slipped and he fell to the ground floor, a distance of about forty feet, striking the boxes which had been lowered, and was injured to such an extent that within a short time he died.

The deceased was twenty-one years of age at the time of his death and his widow was about nineteen years of age at that time.   Some years before his death he and his widow, who were, of course, at that time very

young, agreed to cohabit together as man and wife and took each other as husband and wife. They were at that time under the age of legal consent under the provisions of the Domestic Relations Law and under the authority of *Conte* v. *Conte,* 82 App. Div. 335; *Kruger* v. *Kruger,* 137 id. 289. On April 16, 1915, a daughter was born to the couple, who was christened Eleanor, and a few days before the death of decedent, July 6, 1916, Julius Lewis, the father, and Helen Lewis, the mother, of the child Eleanor, and after both parties had arrived at the age of legal consent, were legally married by a ceremonial marriage performed by a clergyman, and in this way the child was duly legitimatized. Section 24, chapter 19, of the Laws of 1909, known as the Domestic Relations Law, provides as follows: "All illegitimate children whose parents have heretofore intermarried or who shall hereafter intermarry shall thereby become legitimatized and shall become legitimate for all purposes and entitled to all the rights and privileges of legitimate children; but an estate or interest vested or trust created before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimatized. Nothing in this article shall be deemed or construed to in any manner impair or affect the validity of any lawful marriage contract made before the passage of this article." See also *Summo* v. *Snare & Triest Co.,* 166 App. Div. 425.

The deceased at the time of his death was in the service of the state and acting for the benefit of the state and in 1918 the legislature passed an enabling act (see Laws of 1918, chap. 611), which reads as follows:

" Section 1. The court of claims is hereby authorized to hear, audit and determine the claim of Helen Lewis and Eleanor Lewis, respectively the widow and infant daughter of Julius Lewis, late of the city and

county of New York, deceased, or of the administrator
of his estate, in their behalf and for their benefit,
against the state, for damages for the death of said
deceased, alleged to have been caused by personal
injuries alleged to have been sustained by him on or
about the thirteenth day of July, nineteen hundred
and sixteen, while at work as an enlisted member of
the twenty-first company coast artillery corps of the
National Guard, New York, in the armory of the ninth
coast defense command, at one hundred and twenty-
five West Fourteenth Street, in the city and county of
New York, engaged in hoisting and lowering cases
pertaining to his said company or to said armory, or
to the military establishment of the state of New York,
or to military service, by reason of his being precipi-
tated and falling from above the balcony to the drill
floor of said armory and striking his head against a
case; that in conducting such hearing, the court shall
not be bound by common law or statutory rules of
evidence, * * * but may conduct the same in such
manner as to ascertain the substantial rights of the
parties; and if the court finds that such injuries were
so sustained, damages therefor shall constitute a
legal and valid claim against the state, and the court
shall award to and render judgment for the claimants
for such sum as shall be just and equitable, notwith-
standing the lapse of time since the accruing of dam-
ages, provided the claim herein is filed with the court
of claims within one year after this act takes effect.

" Section 2. This act shall take effect immediately."

The claimant's contention is that this act gives the
administrator a right to have the court award him
damages for the death of the deceased and that the
state has declared by said act that such damages are
a legal and valid claim against the state and that the
intent of the act was to award damages and the matter
was to be submitted to this court for the purpose only

of fixing the amount to be awarded to the administrator for the benefit of decedent's wife and child. The state, in defense, claims that if the deceased was guilty of contributory negligence the claimant cannot recover.

We think that the contention of the claimant is correct. The act recites the manner of the death of decedent and provides that this court is authorized to hear, audit and determine the claim against the state for damages for the death of said decedent, and recites that if the court finds that such injuries '' were so sustained, damages therefor shall constitute a legal and valid claim against the state, and the court shall award to and render judgment for the claimants for such sum as shall be just and equitable.'' This statute, as we construe it, intends to compensate the widow and child of the deceased for the death of the decedent because of his death while in the employ of and rendering services for the state, irrespective of the question as to decedent's contributory negligence.

The legislature has power and authority to assume liability for the state although the state would not be liable without assuming such liability, the rule of law being that the legislature can recognize claims founded on equity and justice (*Lehigh Valley R. R. Co.* v. *Canal Board,* 204 N. Y. 471; *O'Hara* v. *State of New York,* 112 id. 146; *Munro* v. *State of New York,* 223 id. 208); so that when the claimant established the facts recited as to the decedent's death and the manner of his death as recited in chapter 611 of the Laws of 1918, we think that he is entitled to compensation for the death of the deceased.

The deceased was, at the time of his death, earning about $600 per annum, and while it is probable that his earning power as he grew older would have increased, yet it may be that he may not have lived but a short time after the date of his accident, or he may have be-

come ill or acquired habits of idleness, and many other things may have occurred that would have decreased or destroyed his earning power; so that, taking into consideration all the probabilities, we deem it would be fair to take the average earnings as they existed at the time of his death as to his future earnings and leave it at $600 per annum. Out of this he would probably use for himself for his food, clothing and spending money, $300 a year, leaving for his family $300 a year that it would be benefited by his earnings. We are limited in estimating the loss to the pecuniary loss to the family and have no right to consider the other elements that enter in the loss of a father and husband to a family, except so far as it bears on the attention which the deceased might give to the culture and education of his children and so far as they are deprived of the parental care in a pecuniary sense, and we have no right to take into consideration the affections and sentiments and the deprivation of society and companionship. See Code Civ. Pro. § 1904. We have a right, in determining the probable duration of the decedent's life for the purpose of estimating the damages, to take into consideration annuity and mortality tables. *Sauter* v. *New York Central & H. R. R. R. Co.*, 66 N. Y. 50; *Austin* v. *Metropolitan St. R. Co.*, 108 App. Div. 252; *Schell* v. *Plumb*, 55 N. Y. 592; *Beecher* v. *Long Island R. Co.*, 53 App. Div. 324; *Farley* v. *Union Mutual Life Ins. Co.*, 41 Hun, 305. Taking his earning powers and the probably duration of his life, the expenses incurred for burial, etc., we have, following the rule as to pecuniary loss, estimated that the damage sustained by the claimant is $5,000.

WEBB, J., dissents, without opinion; ACKERSON, P. J., concurs.

Claim allowed.