## The Reba, etc.

*(District Court, S. D. New York.   November 10, 1884.)*

1. COLLISION IN SLIP—HALF DAMAGES.
   The tug R., in towing the schooner M. into a slip filled with ice, passed a canal-boat moored in the slip and caused a break in the planking of the canal-boat, either through direct contact with the schooner or through the crush of ice between them. *Held*, immaterial from which cause the break arose, the blow being more violent than could be justified as an ordinary contact in putting boats in place, and that the tug was responsible for the damage; but it appearing further that the boat was old and not sound, and no notice of her weakness being given on the approach of the tug and schooner, *held*, that this was negligence in the libelant, and that he should, therefore, recover but half his damages.

2. SAME—FURTHER DAMAGE.
   The canal-boat having been towed to Hoboken for repairs, and there moored upon sloping flats, and having broken from her moorings through insufficient lines and slid down with the ebb-tide, and thereby run against some floating spiles, causing her further damage, *held*, that the latter damage, arising proximately from an independent act of negligence, was not chargeable against the tug as damages arising out of the previous collision in the slip.

In Admiralty.

*J. A. Hyland*, for libelants.

*Anson B. Stewart*, for claimants.

BROWN, J.   On the morning of the eighth of March, 1881, the canal-boat J. C. Heath, owned by the libelants, was discharging coal along the southerly side of the pier at the foot of Fifty-first street. The slip was filled with drift-ice, which was somewhat frozen together the night previous. The schooner Manhattan, desiring to obtain a berth inside of the canal-boat, employed the steam-tug Reba to take her in. The tug first broke up the ice in the slip to some extent, then took the schooner upon her port side and towed her slowly into place ahead of the canal-boat, proceeding in a somewhat diagonal direction towards the upper side of the slip, and giving an inward swing to the stern of the schooner when she had nearly passed the canal-boat. The mate of the schooner held a fender in his hand, and as the schooner passed along he walked aft, prepared to make use of the fender if necessary. The captain was near the stern of the schooner, and both he and the

mate testify that the schooner at no time came nearer than a foot from the bow of the canal-boat, and that the fender was not in fact used. Several witnesses, however, from the canal-boat, and two laborers who were shoveling coal near the bow of the boat, all testify that there was a considerable blow given to the canal-boat, and a sudden crash, followed by an immediate heavy leak of the boat, which had not leaked before. One plank was bent and mashed in near the bow. Shortly afterwards, to prevent sinking, the canal-boat was towed to the flats at Hoboken, and moored along-side the dock, where she was fastened by lines. As the tide ebbed, the lines gave way and she slid out into the stream. In doing so, one or two additional holes were made in her side, apparently from coming in contact with floating spiles, one of which was run through her side and found fastened in it when she was afterwards raised.

There can be no question upon the evidence that the sudden leak, while the canal-boat was lying at the Fifty-first street pier, was caused by the Manhattan's breaking the plank in the canal-boat's bow. It is immaterial whether this was done by the fender or by the crush of ice between them. From the explicit testimony of those on board the Manhattan, and from their better opportunities for observation, I am disposed to credit their testimony that the break in the plank of the canal-boat's bow was not caused by the pressure of the fender, but by the ice. One of the witnesses speaks of the ice as soft, but all agree that it was five or six inches thick, and it was so hard as to require breaking up by the tug before the schooner could be brought in. One of the laborers who was shoveling coal was knocked down by the violence of the blow; and this blow was probably caused by the swing given to the schooner's stern when she had nearly passed the canal-boat.

A tug undertaking to land another vessel must be held answerable for injuries occasioned by any careless handling of her tow, or by the jamming of vessels beyond such ordinary contacts as are usual and consistent with careful handling in getting boats in place. The danger to other boats from the crush of ice is as manifest as that from direct collision; and in going amid ice, past vessels already moored, other vessels are clearly bound to leave sufficient space, and to proceed with such care and moderate speed as to do no injury to boats of ordinary soundness. The swing of the schooner's stern in this case, approaching within one or two feet of the canal-boat's bow, was clearly sufficient to cause the ice to make the break in the bow, and the leak complained of. The blow, I think, is clearly proved to be such as is unjustifiable, whether inflicted upon a new boat or an old one, and the Reba must accordingly be held liable. The canal-boat had, however, been long in service. Pieces of her timbers, produced in court, taken by the hand from each of the holes by a credible witness, were so decayed and rotten as to be easily broken with the fingers. Upon this evidence I cannot regard the canal-boat in this case

as fit to encounter the ordinary contacts with other vessels to which she was necessarily exposed in this harbor; and I must treat it as negligence in her owners to navigate her amid ice, and to expose her to the increased hazards arising therefrom, without special notice to other vessels approaching her to keep away on account of her weak condition. *The Syracuse,* 18 FED. REP. 828. I allow the canal-boat, therefore, but one-half of the damages arising from her injury in the slip. The injury from the spiles, when she broke loose from the parting of her lines at Hoboken, arose from an independent act of negligence in the use of lines insufficient to hold her in place. That was in no way the natural, necessary, or immediate consequence of the previous injury in the slip, or of her necessary transfer to the flats at Hoboken. The injuries at Hoboken are too remote to be fairly attributed to the leak caused in New York, and no recovery, therefore, can be had for those. *Grand Trunk Ry. Co.* v. *Griffin,* 21 FED. REP. 733. It is difficult to understand how the floating spiles at Hoboken could be driven through the side of the canal-boat in the manner described by the witnesses; but this circumstance seems to confirm the evidence of the weak condition of the boat.

At the trial full proof was not taken of the extent of the damages. From what appears it is probable that the damages to the canal-boat, arising from the injury at the Fifty-first street slip, would not exceed, including towage and the delay for repairs, $200. To avoid further expense in so small a matter I will allow the libelant to take a decree for $100, with interest from March 8, 1881, with costs; except that if either of the parties be dissatisfied therewith, they may take the usual order of reference to ascertain the exact damage, at the risk of paying the costs of the reference, unless a more favorable recovery be had.