pellant Butler was director of the bank; and it is not unreasonable to suppose that they appreciated the force of the new legislation relating to the custody of trust funds, and that they entered into the bond with a full understanding that the state had inaugurated a new system, and intended that all trust funds held by county treasurers should be kept in a designated depository; and presumably they executed the bond in question with knowledge that the policy of the state had been changed, and that it was the intention of the legislation that all such funds should be secured, not only by a depository named by the comptroller, but that a bond should be executed from the depository, with sureties, for the purpose of giving further security to trust funds.

We think the learned referee fell into an error in his first conclusion of law, where he says that the defendants "are not liable for the said sum of $2,049.40, the amount due on the funds deposited with the bank, under the order of the court, prior to its designation by the comptroller as a depository." That conclusion is duly excepted to, and the exception presents an error requiring us to reverse the judgment.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except WARD, J., not voting.

---

O'REILLY v. NEW BRUNSWICK, A. & N. Y. STEAMBOAT CO.

(City Court of New York, General Term.   February 2, 1899.)

1. COLLISION—STEAMER PASSING ANCHORED VESSEL—NEGLIGENCE.

   A steamboat going down river at about 10 or 12 miles an hour passed a canal boat tied to a dock at a distance of 150 feet. The river was filled with ice, which the rapid movement of the steamer displaced, and pushed against the canal boat, sinking her. Those in charge of the steamer had prior thereto been warned that it was dangerous to speed fast at the place in question. *Held*, that the question of negligence in passing the canal boat at such speed was for the jury.

2. SAME—ACTION FOR NEGLIGENCE—EVIDENCE.

   In an action against a vessel to recover for negligently sinking an anchored boat by passing her with such speed as to push ice floes against her, evidence that the persons in charge of the vessel had been warned that it was dangerous to speed fast at the place in question is admissible.

3. SAME—DUTY TO RAISE SUNKEN VESSEL—MEASURE OF DAMAGES.

   Where a boat has been sunk through the negligence of a third person, and wrecked so as to be a total loss, the owner is not required to raise and repair her, but may desert her, and sue for the value.

4. SAME—VESSEL AT ANCHOR—CONTRIBUTORY NEGLIGENCE.

   It is not contributory negligence for the owner of a canal boat to leave her tied to a dock in charge of a man, he being required to exercise only the care required, under the surrounding circumstances, of a prudent person.

5. SUITS AGAINST FOREIGN CORPORATIONS—JURISDICTION.

   The court has jurisdiction of a suit against a foreign corporation on a cause of action arising outside of the state, unless it affirmatively appears that plaintiff is a nonresident, his residence being assumed.

Appeal from trial term.

Action by James O'Reilly against the New Brunswick, Amboy & New York Steamboat Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before FITZSIMONS, C. J., and O'DWYER, J.

Hyland & Zabriskie, for appellant.
Stewart & Macklin, for respondent.

FITZSIMONS, C. J. The defendant's boat was engaged in the business of carrying passengers and freight on the Raritan river, N. J., on the 28th of January, 1895. While so employed and coming down the river, it passed a point thereon called "Isaac's Dock." The plaintiff's canal boat was lying at said dock, laden with a portion of a cargo of fireproofing brick. The river was well filled with ice, particularly at the place in question. It appeared from plaintiff's testimony that defendant's boat was going very rapidly, about 10 or 12 miles an hour; that, while passing Isaac's Dock, she was about 150 feet away; her quick passage through the ice caused a rapid and violent displacement of same, causing some of the pieces, many inches in thickness, to strike against plaintiff's boat with such violence as to break a hole in her side, causing her to sink within 15 minutes; that plaintiff subsequently endeavored to float his boat, but found that the cost of so doing would in all probability exceed its value. These boats, of course, had a right to navigate the river in question, and also to land their passengers and freight at the docks along the same. While plaintiff's boat was tied to the dock mentioned, it was the duty of those in charge of defendant's boat to so navigate the same as to cause no harm to plaintiff's boat, if careful and prudent management could do so. Defendant's servants certainly had no right to drive its boat ahead at such a rate of speed while so close to the dock in question as to cause the ice to be thrown up against the side of plaintiff's boat, and thus destroy her. To hold otherwise would be to declare that boats like the one owned by plaintiff would have no right to navigate the Raritan river if their presence retarded the speed of defendant's boats. Both of them had a right to be there. The defendant did not have the exclusive right. It was a question of fact for the jury to decide whether, under all the circumstances, it was a negligent act for defendant to steam along at the rate of 10 or 12 miles an hour, particularly in view of the fact that, on several occasions just prior to the day in question, it was called to the attention of its servants that the spot in question was a dangerous place to speed fast while passing, and the admission of such testimony was proper. This point was a sort of cove, where the ice gathered and centered in extraordinary quantity, size, and thickness, making it necessary, in view of the caution given, for defendant to see to it that, while passing, care and caution were used; and, if necessary, it was the duty of the persons in charge of its boat to slow down her speed, and keep as far away as she could safely be kept, so as to do no damage to boats like plaintiff's, and which might be tied there. We think that the jury

was justified in finding that no such care was used, but that defendant's servants, on the contrary, were careless and negligent.

The plaintiff's boat was a wreck, apparently, as testified to by plaintiff's witnesses. Under the circumstances, he was not required to raise and repair her, but had a right to desert her, being a total loss, and sue for her value.

We also think that the evidence shows that plaintiff used all proper means to care for his boat during his absence. He left a man in charge of her. He or his man was not bound to be always on board his boat. Only such care was necessary as was required by surrounding circumstances, and which a prudent man would use. In this instance such care was taken, and, even if plaintiff was actually on his boat, he could not have done any more to have saved her than was done by his man in charge. In fact, we think that nothing could have been done by any one to save her, the evidence showing that she sank within 15 minutes; also, nothing could have been done to avert the danger which caused her destruction. Neither the plaintiff nor the man in charge could have kept the ice from striking against her sides. On the whole, we think that the evidence shows that the damage done plaintiff was caused entirely because of defendant's negligence, and that plaintiff was free from contributory negligence.

Although defendant is a foreign corporation, and the cause of action accrued in New Jersey, this court has jurisdiction of this action, because it does not affirmatively appear either in defendant's answer or in the testimony that plaintiff is not a resident of this state. His residence will therefore be assumed, thus conferring jurisdiction upon this court. See Sims v. Bonner (Super. N. Y.) 16 N. Y. Supp. 801; Leslie v. Lorillard, 18 N. Y. Wkly. Dig. 288.

The judgment is affirmed, with costs.

O'DWYER, J., concurs.