BARBARA M. SILKS *v.* HELEN H. MONZANI ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 4, 1941—decided January 9, 1942.

*J. Warren Upson,* with whom, on the brief, was *William J. Secor, Jr.,* for the appellants (defendants).

*Hugh J. McGill,* with whom was *Stephen A. Homick,* for the appellee (plaintiff).

AVERY, J. On February 7, 1941, at about 8:15 in the evening, the plaintiff, while crossing West Main Street in the city of Waterbury, was struck and injured by an automobile owned by the named defendant and operated by her son, who was then acting as her agent. After a trial to the court, judgment was entered in favor of the plaintiff for $7000, from which the defendants have appealed, claiming that the finding of the trial court should be corrected and when so corrected would show that the plaintiff's injuries were not caused by any negligence upon the part of the defendant operator of the car but by her own negligence in crossing the street, and claiming further that the damages awarded were excessive.

The essential facts found by the trial court are these: On the northwest corner of the intersection of West Main Street and Prospect Street there is a crosswalk indicated by painted parallel white lines nine feet apart on the pavement extending from the corner in a southeasterly direction diagonally across West

Main Street. There is also a crosswalk extending from the corner in an easterly direction across Prospect Street. This crosswalk is also indicated by parallel painted white lines, the southerly line of which intersects the easterly line of the diagonal crosswalk on West Main Street. On the evening in question there were intermittent periods of light and heavy rain. The plaintiff left the Church of the Immaculate Conception and proceeded on the sidewalk on the north side of West Main Street in an easterly direction towards the northwest corner of West Main and Prospect Streets. Upon reaching the corner she stopped and looked to her left in an easterly direction and saw an automobile approaching from that direction on West Main Street and waited for it to pass. After this automobile had passed, she stepped off the curb onto the diagonal crosswalk about midway between the painted lines, and when she was three feet south of the curb she saw an automobile approaching from her right traveling in an easterly direction, whereupon she stopped and permitted it to pass before continuing to cross. After this automobile had passed, she again looked in an easterly direction, having within her view the entrance to Prospect Street and the easterly portion of West Main Street. Seeing no traffic coming out of Prospect Street or approaching in a westerly direction on West Main Street, she continued to look in an easterly direction, at the same time taking three or four steps on the crosswalk, when she was struck in the back of her left knee by the right front bumper of the defendants' automobile, which was then making a right or westerly turn into West Main Street from Prospect Street. There was an unobstructed view of the corner and crosswalk for a considerable distance along Prospect Street. The defendant driver gave no warning signal of his ap-

proach by horn or otherwise. The impact of the collision caused her body to be twisted or turned and she was thrown down on the pavement, receiving injuries.

The fundamental claim of the defendants upon this point of the case is that the plaintiff was not upon the crosswalk when struck but was crossing at a point west of it and walked blindly into the side of the defendants' automobile. The trial court found that when the plaintiff was struck she was pushed or thrown to a point three feet to the west of the westerly line of the crosswalk and from twenty-five to thirty inches south of the northerly curb of West Main Street and lay with her head pointed in an easterly direction and her feet in a westerly direction alongside the defendants' automobile, which had come to rest with its rear bumper directly over the westerly line of the crosswalk and approximately six feet south of and almost parallel to the northerly curb of the street. There is evidence from which the trial court could reasonably have found that the plaintiff at the time of the impact was on the crosswalk, and from the evidence in the case the finding of the trial court that the plaintiff was forced by the impact from the walk and lay some three feet to the west of it is a reasonable inference. We conclude, therefore, that no correction of the finding is permissible by which the defendants would be materially advantaged.

In our examination of the record, we find no testimony tending to show that the driver of the automobile observed the plaintiff in the street or that the plaintiff observed the automobile until the instant of the collision. Considering the character of the night, the situation on that corner, with two intersecting crosswalks, the testimony that the plaintiff was struck in the back of the left leg, and all the circumstances

disclosed by the evidence, the determination of which party was at fault was peculiarly a question of fact for the trial court. *Hine* v. *McNerney,* 97 Conn. 308, 311, 116 Atl. 610; *Todd* v. *Bradley,* 99 Conn. 307, 314, 122 Atl. 68; *Alston* v. *Consolidated Motor Lines, Inc.,* 118 Conn. 707, 708, 173 Atl. 899; *Marini* v. *Wynn,* 128 Conn. 53, 55, 20 Atl. (2d) 400.

After the collision, the plaintiff was removed to a hospital in Waterbury and the court found it there appeared that she had a laceration of the right side of the scalp, a laceration of her elbow, and a swelling of the left leg, which on examination was found to have a compound comminuted fracture causing an irregular joint margin. The laceration on the right side of her head required suturing and resulted in a permanent scar. This, however, is not visible, being well covered by hair. She was confined to the hospital for six weeks with her leg in a plaster cast its entire length. The injury to her right elbow resulted in a permanent scar an inch in length. The plaintiff suffered severe pain in her head and leg and will continue to do so for a considerable period of time. She was unable, on returning to her home, to perform her household duties, and up to the time of trial required the support of a cane in walking. There is a 35 per cent permanent disability in her left knee. The plaintiff is a seamstress, using in her work a pedal type sewing machine. The injury to her left knee will prevent her from resuming her work for a considerable period of time and will reduce her future earning capacity. The plaintiff's loss of earnings and actual expenses to the time of trial, with an additional $50 representing estimated future medical expenses, amounted to $1184.

The only practical test in estimating the damages "is whether the total damages awarded fall somewhere

within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake, or corruption." *Briggs* v. *Becker,* 101 Conn. 62, 66, 124 Atl. 826. "To overthrow the award of damages when assessed by a judge, the defendant must show that it was so excessive as to be one that the trial court could not reasonably make." *Squires* v. *Reynolds,* 125 Conn. 366, 369, 5 Atl. (2d) 877. We cannot say the damages awarded in this case require interference by this court.

There is no error.

In this opinion the other judges concurred.