R & H Development Company *v.* Diesel Tanker, J. A. Martin, Inc.

Appellate Division of the Circuit Court

File No. CV 1-6211-3030

Argued February 3—decided June 10, 1964

*John F. Clancy,* of Bridgeport, for the appellant (defendant).

*John F. Lambert,* of Greenwich, for the appellee (plaintiff).

JACOBS, J.   This is an appeal from a judgment rendered against the defendant, the owner of the oil tanker "A.H. Dumont," for damages which the

tanker is alleged to have caused to pilings belonging to the plaintiff. The findings, which are not subject to any correction, disclose that on February 13, 1962, the tanker was engaged in the performance of a maritime task upon the navigable waters of Greenwich harbor, within this state.[1] The tanker had entered the harbor for the purpose of unloading and delivering her cargo of home fuel oil and kerosene on the docks of the Fairfield Home Oil Company. At about 4:45 p.m. on the date in question, the tanker passed buoy No. 9 in the harbor, a distance of some 1000 feet south of her destination, and there encountered a field of packed ice, varying from four to five inches in thickness and extending from shore to shore. Little or no progress could be made through the icebound conditions of the harbor. A time came when the tanker was unable to make any headway at all through the solid ice. The master cut through the ice field by maneuvering the tanker forward and backward until he finally broke through the solid ice. The operation lasted about forty-five minutes. The pressure exerted by the tanker on the solid ice by the maneuverings bent and ultimately snapped nine of the pilings located on the plaintiff's shore development. The court

[1] On March 11, 1964, the Appellate Division of the Circuit Court entered an "Order Remanding Case to the Trial Court," as follows: "In the above-entitled action, pursuant to the provisions of § 985 of the Practice Book (1963 ed.), the appellate panel hereby remands said cause to the trial court to reconsider its Finding, referring specially to Paragraph 9 of said Finding with or without the taking of additional evidence, having special reference to the Act of July 12, 1955, Public Law 152, Chapter 333, 69 Stat. 298, 1955 A.M.C. 2120, wherein it appears that by an Act of Congress a certain portion of the waterway in Greenwich Harbor, in the town of Greenwich, Connecticut, is declared to be nonnavigable water of the United States within the meaning of the Constitution and the laws of the United States; And Further, whether said Act is applicable to the area involved in this case." We have been assured by the trial court's "amended finding of facts," filed on April 3, 1964, that the act "does not apply to the area in this case."

found that the damage was attributable to the negligence of the tanker in laboring in and through the packed ice and awarded the plaintiff damages in the sum of $845.

Our initial inquiry, which we determine on our own motion, is whether the court had jurisdiction to try this case. "The Judiciary Act of 1789, . . . while bestowing 'exclusive' admiralty jurisdiction on the District Courts, saved 'to suitors, in all cases, the right of a common law remedy where the common law is competent to give it.' " Gilmore & Black, Admiralty § 1-13, p. 33; see *Romero* v. *International Terminal Operating Co.*, 358 U.S. 354, 361. This provision has been carried over, in somewhat altered language, to 28 U.S.C. § 1333 and remains unchanged in substance to the present day. "This provision, which created a 'duality of maritime jurisdiction,' has been amended in phraseology, but not in substance, and has remained a feature of the federal legislation. As it reads now, the provision that the District Courts shall have original jurisdiction, exclusive of the courts of the states, of any civil case of admiralty or maritime jurisdiction, is qualified by the clause, 'saving to suitors in all cases all other remedies to which they are otherwise entitled.' " 2 Am. Jur. 2d, Admiralty, § 105; *Jansson* v. *Swedish American Line,* 185 F.2d 212, 216 (1st Cir.) ; Robinson, Admiralty, p. 23 (1939).

"The traditional rule that tort jurisdiction in admiralty does not extend to damage caused on land was altered by a statute adopted by the 80th Congress providing that admiralty jurisdiction shall extend to all cases of damage or injury, to person or property, caused by a vessel on navigable water 'notwithstanding that such damage or injury be done or consummated on land.' " 1 Benedict, American Admiralty § 128 (Sup. 1963); see

62 Stat. 496, 46 U.S.C. § 740; *United States* v. *Matson Navigation Co.*, 201 F.2d 610 (9th Cir.); 2 C.J.S., Admiralty, § 64 (Ann. Cum. Sup.); Gilmore & Black, op. cit., p. 433; Farnum, "Admiralty Jurisdiction and Amphibious Torts," 43 Yale L.J. 34; notes, 17 Geo. Wash. L. Rev. 353, 37 Geo. L.J. 252. The type of action involved in this case, initiated on navigable waters and consummated on land, is within the civil admiralty jurisdiction of the statute and therefore falls within the scope of the saving clause. See *Salasky* v. *Atlas Tank Processing Co.*, 120 F. Sup. 225 (E.D.N.Y.) (small craft damaged from oil sludge); *Chicago, B. & Q.R. Co.* v. *The W. C. Harms*, 134 F. Sup. 636 (S.D. Tex.) (collision between a train and a vessel protruding on shore); *Petition of New Jersey Barging Co.*, 168 F. Sup. 925 (S.D.N.Y.) (damage to shore waterfront and beaches); *Petition of New York Trap Rock Corporation*, 172 F. Sup. 638 (S.D.N.Y.) (damage to pier); *Fematt* v. *Los Angeles*, 196 F. Sup. 89 (S.D. Cal.) (ship-to-shore tort resulting in personal injury); *United States* v. *Matson Navigation Co.*, supra (damage to dike attached to the shore); *Diamond State Telephone Co.* v. *Atlantic Refining Co.*, 205 F.2d 402 (3d Cir.) (damage to submarine cable). We hold that this action was properly brought in a state court. See *C. F. Rule Construction Co.* v. *Cumberland River Sand Co.*, 204 Tenn. 378 (damage to bridge pier struck by a barge tow).

Where, as here, a maritime cause of action is sued upon in a state court under the "saving to suitors" clause, "the substantive law to be applied is that which would have been applicable had the action been brought in the admiralty court. . . . In other words, it is only the privilege to prosecute for a maritime cause in the common-law courts that is saved to a state court by the clause involved, not the right of election to determine that the defend-

ant's liability is to be measured by the common law."
2 Am. Jur. 2d, Admiralty, § 113; *Jansson* v. *Swedish American Line,* supra, and long list of cases there cited. "Specifically, the general maritime law, where applicable, must rule, even though suit is brought in state court." Gilmore & Black, op. cit., p. 45; see 4 Benedict, American Admiralty (6th Ed.) § 612. Local statutes and local customs may be considered if, and only if, they do not conflict with federal law. "[The United States Supreme Court] has said that a state, 'having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the 'substantive maritime law.' *Red Cross Line* v. *Atlantic Fruit Co.,* 264 U.S. 109, 124." *Madruga* v. *Superior Court,* 346 U.S. 556, 561; see *Lloyd* v. *Victory Carriers, Inc.,* 402 Pa. 484. State courts are bound, moreover, to take judicial notice of and to enforce federal statutes regulating navigation without any formal proof, even though not raised by the pleadings. "[T]he courts of the State . . . are required to take judicial notice and enforce general statutes of Congress without any formal proof . . . even if the point be not urged by counsel and is originated by the court." *Carlin* v. *New York, N.H. & H. R. Co.,* 71 Misc. 521, 524 (N.Y.). The rules governing navigation must be given the same construction by a state court as they are given by a federal court sitting in admiralty. "There can be no doubt that the statutory regulations enacted by Congress to prevent collisions are to be interpreted in the same way in the common law courts of a State as they are in the courts of the United States, if the action is for a maritime tort committed upon navigable waters, within the admiralty jurisdiction of the United States; and that the judgment of the State court may be revised by the Supreme Court of the

United States." *Chesley* v. *Nantasket Beach Steamboat Co.,* 179 Mass. 469, 471.

The trial court having expressly found that the tanker was sailing through a navigable harbor at the time of the occurrence, the federal Navigation Rules for Harbors, Rivers and Inland Waters Generally (33 U.S.C. §§ 151-232) are applicable. The acts and omissions of the vessel and crew alleged by the plaintiff to constitute negligence must be examined in the light of chapter 4, § 1, article 29, of the act of June 7, 1897 (30 Stat. 102, 33 U.S.C. § 221), which provides: "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case." "This Rule . . . makes it clear that the Rules are not a complete and comprehensive code of navigation, compliance with which is sufficient to avoid liability, but that, on the contrary the ordinary precautions of good seamanship, as defined by custom and case law, are still required." Gilmore & Black, op. cit., p. 420.

The unchallenged findings show that the pilings and other shore installations were authorized by the federal government through standard procedures; they do not, therefore, fall within any of the federal proscriptions of unlawful obstructions on navigable waters. We are, of course, cognizant of the fact that to be weighed against the plaintiff's private property rights in its shore installations is the public right of navigation. *Petition of Martin,* 102 F. Sup. 43, 50 (E.D. Pa.); cf. *Silver Springs Paradise Co.* v. *Ray,* 50 F.2d 356, 359 (5th Cir.). The shore itself and the structures thereon are sub-

ject to the dangers incident to the paramount right of navigation, such as the wash from the reasonable propelling of vessels in the stream and damage to shore installations, by reason of their location, from accidents resulting from moving craft along the waterway. *Adams* v. *Carey,* 172 Md. 173, 181; *Field* v. *Apple River Log Driving Co.,* 67 Wis. 569, 576.

But the right of navigation, while paramount, is not exclusive. Thus, a vessel may not wilfully proceed so as to cause damage to shore installations. See *People's Ice Co.* v. *The Excelsior,* 44 Mich. 229, 234 (gross negligence). Private property owners in or near navigable waters must assume some degree of risk; vessels enjoying the public paramount right of navigation may not endanger private riparian property provided reasonable care on the part of the vessel could avoid it. " 'Negligence' at sea does not differ, in principle, from 'negligence' ashore. It is an elastic and open-textured concept, defined as the correlative of the equally vague standard of 'due care'; 'good' or 'prudent' seamanship sometimes appears as a synonym." Gilmore & Black, op. cit., p. 420.

Maritime collision law is not restricted to those cases in which two vessels or a vessel and a shore installation come together in direct, physical contact; it encompasses also cases of damage caused by swells or displacements of ice. *Dufrene* v. *The Diversity,* 163 F. Sup. 331 (E.D. La.), aff'd, 272 F.2d 880 (5th Cir.); *Byrd* v. *Belcher,* 203 F. Sup. 645 (E.D. Tenn.); *Indian Towing Co.* v. *The Lyons Creek,* 187 F. Sup. 774 (E.D. La.); *O'Reilly* v. *New Brunswick, A. & N.Y. Steamboat Co.,* 26 Misc. 195 (N.Y.) (ice); *The Reba,* 22 Fed. 546 (S.D.N.Y.) (ice).

Whether a vessel is to be held liable for damage caused by its passing through navigable waters

must depend upon the facts and circumstances of the particular case. *Moran* v. *The Georgie May,* 164 F. Sup. 881, 884 (S.D. Fla.). "When a moving vessel strikes a stationary object, such as a wharf, **an** inference of negligence arises and the burden is then upon the owners of the vessel to rebut the inference of negligence." *General Petroleum Corporation* v. *Los Angeles,* 42 Cal. App. 2d 591, 595; see *Farrell Lines, Inc.* v. *The Birkenstein,* 207 F. Sup. 500, 505, (S.D.N.Y.). The same rule applies when it causes damage indirectly to a stationary object. *West India Fruit & Steamship Co.* v. *Raymond,* 190 F.2d 673, 674 (5th Cir.). Generally, a vessel must take reasonable precautions to avoid damage by reduction of its speed or change in course. *Byrd* v. *Belcher,* supra, 648.

And where it appears that a vessel has been guilty of a statutory fault before collision, the vessel thus cast in fault must prove, to escape liability, not only that the fault shown probably was not but also that it could not have been a contributing factor in causing the damage. *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 136;[2] see Gilmore & Black, op. cit. § 7.5, p. 404.

In the case before us, the vessel carried no lookout aside from the pilot, who was navigating the tanker, and two crew members, who were preparing for the docking. This is an insufficient lookout. See 30 Stat. 102 (art. 29), 33 U.S.C. § 221; *Ulster Oil Transport Co.* v. *The Matton No. 20,* 109 F. Sup. 581 (E.D.N.Y.), aff'd, 210 F.2d 106 (2d Cir.). The helmsman or officer in charge of the vessel cannot be considered a lookout. *Smith* v. *Bacon,* 194 F.2d

[2] The "Pennsylvania rule," named after the case in which it was laid down by the Supreme Court, states a drastic and unusual presumption arising on its being shown that a vessel has been guilty of a statutory fault before collision. See Gilmore & Black, Admiralty § 7.5, p. 404.

203, 206 (5th Cir.), rehearing denied, but modified on other grounds, 196 F.2d 912 (5th Cir.). The lookout on a vessel, wherever he may be located, should have no other duties. *United States* v. *The Holland,* 151 F. Sup. 772, 777 (D. Md.). In taking judicial notice of the provisions of 30 Stat. 102 (art. 29), 33 U.S.C. § 221, as indeed we are required to do, and the decisions to which we have adverted, we are led to the conclusion that the tanker, in not having a sufficient lookout under the circumstances, must be deemed to have been in statutory fault prior to the mishap.

The plaintiff sought ordinary relief for damages. Since we find the vessel was guilty of a statutory fault before the accident, the burden fell upon the defendant to absolve itself from liability. In effect, the defendant attempted to meet this burden by an affirmative showing of inevitable accident, that is to say, that the damage resulted from nonculpable pursuit of the paramount right of navigation. But the record is notably silent on the sufficiency of a proper lookout. Moreover, it could not be said that it was unreasonable for the court to find, as it did, that on the facts of the case there were reasonable alternatives of navigation the pursuit of which could have prevented the damage without imposing an onerous burden on the vessel. There was no fault imputable to the plaintiff or its agents or those in charge of the shore development. It is difficult for us to resist the conclusion that the master failed to exercise ordinary foresight in anticipating the damage to the pilings and to exert the proper means of avoiding it.

We do not decide the plaintiff's claim of additional damages of $75, upon the ground that the point raised has not been adequately briefed for purposes of review. In these circumstances, we

cannot say upon this record that the damages awarded require interference by us; see *Silks* v. *Monzani,* 128 Conn. 470, 475; we must depend, therefore, largely upon the judgment of the trier in the particular case. *Hulk* v. *Aishberg,* 126 Conn. 360, 362.

There is no error.

In this opinion DEARINGTON and ZARRILLI, Js., concurred.